# CHARLESTON.

Andrew Browning v. D. E. Hewitt Lumber Co.

Submitted April 19, 1921. Decided May 10, 1921.

1. Logs and Logging—*Timber Contractor, Who Has Neglected to Keep Accurate Account of Timber Cut, May Supply Omissions by Most Appropriate Means.*

   A plaintiff who has abandoned performance of a contract to cut timber having a diameter of 16 inches and over, at a specified rate of compensation for each 1,000 board feet, the quantity to be determined by scaling at the mill, and who neglects to keep during the operation an approximately accurate account of the timber cut by him, may, after the trees so severed have been manufactured into lumber and the lumber marketed, resort to the most appropriate and reliable means available to supply the omission, if it reasonably appear that the mill measurements were inaccurate and furnished no just basis for computing the compensation due him for the service so rendered. (p. 629).

2. Same—*Method of Computing Amount of Timber Cut Held Inadequate.*

   But where plaintiff deferred for an unreasonable time after the abandonment of the work an attempt to ascertain the board feet in the timber so severed, and to supply this omission caused the stumps to be counted, and measured the diameters, at the base, of ten of the smaller and ten of the larger trees, and their severed tops, and their lengths from depressions in the ground occasioned by their contact therewith in falling, he cannot with such data alone arrive at a fair and just estimate of the quantity of board feet in the trees upon the basis of an average of the whole number ascertained by computing the board feet contents of the twenty selected trees, as there is no such uniformity among the minimum

and maximum sizes on a large boundary as warrants the application of such a rule of computation.     (p. 632).

3.   SAME—*When Averages from Small Number of Trees Cut Permissible to Compute Contents of Extensive Boundary Stated.*

Recourse to such a rule, if ever permissible, is allowable only when no other method is available to determine the quantitative contents of an extensive boundary. It has no application to the facts of the present case where there was available another and more reliable method; for if plaintiff could, as indicated, find the board feet contents of twenty trees, he could in the same manner ascertain the quantity of all the trees in the boundary.     (p. 632).

Error to Circuit Court, Logan County.

Action by Andrew Browning against the D. E. Hewitt Lumber Company.     Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Fitzpatrick, Campbell, Brown & Davis,* for plaintiff in error.

*Chafin & Estep,* for defendant in error.

LYNCH, JUDGE:

Plaintiff sued in assumpsit on the common counts to recover compensation for timber cut and slipped by him for defendant, a lumber corporation, on land described as being on the left hand side of Henry's Branch below Salt Log Fork in Logan County, and the verdict and judgment gave him the amount of his claim less a store account chargeable to and charged against him on the books of the company.

The rate of compensation agreed upon by the parties was $2.75 per each thousand feet, board measure, at the mill operated by the defendant on or near the land where the timber grew, by plaintiff estimated to contain not to exceed 50 acres. The trees included within the terms of the contract were to be 16 inches and over at the butt. Plaintiff did not complete the contract, and his voluntary abandonment of the work to be performed constitutes the first ground of assignment by defendant for reversal of the judgment. If,

as defendant interprets the contract and offered evidence to prove, plaintiff agreed to cut and slip all the trees on the boundary for the stipuluated price, and failed to comply with the contract in that particular, he cannot recover in the action without one or more special counts, according to the common law rules obtaining in this and other states. But if, as he insists and also offered evidence to show, he undertook to perform and diligently prosecuted the work of severance only on the condition that he could abandon it if at any time he should discover his inability to earn profitable wages during its prosecution, he may maintain the action upon the common counts. As there is evidence sufficient to warrant a verdict in accordance with either theory, the jury could, as they did, find for the plaintiff; and of this result defendant cannot complain.

The trees cut and slipped pursuant to the terms of the contract were removed from the land during the progress of the work and after its abandonment by the plaintiff, without being measured properly, as he contends, at the mill, as required by the contract, and if measured, the correct quantity was not communicated to him, as it should have been, or his trees were so mixed or confused with other trees cut by the defendant on the boundary or elsewhere that he was unable to ascertain the exact quantity of lumber for which defendant should render unto him just compensation for the labor performed by him. Wherefore he was compelled to adopt some other method than that prescribed by the contract for the ascertainment of the approximate quantity as the basis of the recovery sought in the action.

The process or method by which plaintiff undertook to overcome the effect of the omission, apparently due to his own negligence or indifference to the preservation of his rights under the contract, and his failure to measure the lumber immediately after his abandonment of the work, when the quantity could have been ascertained with greater ease and accuracy, was this: A count of the stumps of the trees, in part personally identified by him as those he cut during the progress of the operation, amounting to 1,103, and the lengths of ten of the larger and ten of the smaller sizes by

measurements on the ground where they fell, and the diameters of each of the twenty, and from this data determined, according to Scribner's Rules for log measurement, what he deemed to be a fair average of the whole number of trees on the boundary and the aggregate quantity in all of them. In this manner he ascertained the gross board feet to be 986,082 claimed to have been severed by him, the quantity evidently accepted and approved by the jury in its computation of the quantum of damage he was entitled to, less the store account. Or, as so reduced, the verdict and judgment for plaintiff was for $2,211.17, the gross amount being $2,711.72.

The correctness and ultimate result of this process defendant seriously questions. In order to test the accuracy of the appraisement several factors are to be considered. Among these are (1) the acreage in the boundary, not determined by a survey but by an estimate made by and at the instance of plaintiff and of others acting in his behalf; (2) the fact there was not on the boundary poplar, pine, hemlock or walnut trees, usually yielding the greater quantity of lumber, according to the general belief among experienced timber dealers, these or such of them as the land produced having been removed some 35 or 40 years before the date of the contract; (3) the questionable accuracy of the stumpage plan used and of the aggregate quantity of board feet of lumber, as computed in the manner indicated; (4) the discrepancy between the quantities found by plaintiff and defendant respectively, the stumpage count of the latter and the mill measurements of the trees, as provided for in the contract, being less than half the quantity of lumber found by plaintiff.

A just and reasonable valuation or appraisement of the data detailed is essential upon this review, for without them it is difficult to determine the merits of the controversy. These facts are developed only partially by the testimony. Nevertheless, the principal argument of counsel is based upon them and this discussion necessarily must deal with them in the most practical way. It will not do to say merely that these were all matters for the jury to consider and determine,

and that as they have performed that duty this court is powerless to interfere with their verdict, the evidence before them being in conflict. The general rule is as stated, but whether the evidence is or is not conflicting, there is not such virtue or integrity in the judgment of twelve men, however honest and considerate they may be, as forbids investigation and disapproval by an appellate court if an apparent injustice has been done. This court will exercise the authority vested in it to correct so far as possible errors committed on the trial of any case when its facts and circumstances do not warrant the finding. The only question to be dealt with now, therefore, is whether the judgment reviewed is just or unjust in any reasonable aspect or view of the facts and circumstances proved and detailed.

If, while engaged in the operation, plaintiff cut 1,103 trees and defendant afterwards cut 95 more on the same boundary, although plaintiff undertook to prove that only about 50 remained on it when he quit, it produced approximately 1,200 trees, apparently an extraordinary yield even from a virgin forest composed only of beech, sugar and oak above 16 inches in diameter at the butt. But this tract was not a virgin forest and did not contain timber of the highest productive capacity. Nothing appears as to the fertility of the soil except in the brief of counsel for the plaintiff. There is found in the record no proof on the subject, and there is the same want or absence of information sufficient to serve as the basis of a comparison with the productive capacity of the tract in this particular. It is suggested that a Logan County jury could, presumably without proof, determine for itself the timber yield on the boundary, although so far as disclosed no juror saw the tract. Upon that suggestion comment is not necessary.

Again, if it be true, as plaintiff contends and essayed to prove, that the trees cut by him were 1,103 and the yield from that number was 986,082 board feet, then the acre average was 22 trees and the quantative average of the total number was 894 board feet. Apparently that amount is excessive, if the general estimate of experienced timbermen is even

approximately correct, except in virgin forests of exceptionally large timber, particularly hemlock, fir, walnut or poplar. So-called hardwood trees ordinarily yield fewer board feet than those known as soft wood, it is generally believed.

Besides, it is uncertain whether plaintiff did or did not include in the count made by him with the aid and assistance of his employees, about two years after he ceased to perform the labor agreed upon, trees afterwards severed and converted into lumber by defendant. Their inclusion would inevitably lead to an incorrect result, as he would in this manner receive compensation to which he was not entitled. Defendant did not include them in the 478 trees it credited to plaintiff, but the jury ignored that number.

The discrepancy between the two quantities of lumber can be accounted for only on the ground of some innocent or intentional mistake. To whom the error is to be attributed is not now material. It is the fact that is vital. But to say the least, the evidence offered by the plaintiff is unsatisfactory and unreliable and discredits the attempt to obtain a just basis for the computation of the quantity of lumber in the trees cut by him on the boundary. That the proper precaution was not exercised when it should have been is not sufficient to defeat recovery, it is true, as he argues. Its only effect is to create a suspicious circumstance, one that requires a closer scrutiny of the acts of the party at fault. The evidence to support the right to recover in the action is questionable and apparently unreliable in any view of the record. Its uncertainty mainly appears in the counting process. Plaintiff and his several assistants, some of whom had no part in felling the timber, though in a sense acting in concert, divided into groups of two or more and neither group supervised nor tested the work of the other, though they did cover the boundary. They discovered stumps of trees removed from the land years ago, in addition to those recently cut by plaintiff before he quit and by defendant after he quit. Those so found and counted were not marked so as to prevent their being again numbered by some other employee engaged in the same service, as some of them did not have

personal knowledge of the trees cut by plaintiff, and he did not identify those not counted by him.

But conceding the number so ascertained and also the quantity of lumber, board measure, contained in the ten smaller trees having a diameter over 16 inches at the butt and a like number of the larger sizes to be correct, does this admission necessarily carry with it the inference or conclusion that the lumber average of the twenty trees is even approximately the lumber average of 1,103 trees on the boundary? It is a matter of common knowledge that the number of small trees having the diameter required by the contract by far exceeds the number of the larger sizes. Not only does this comparative numerical difference exist, but there is not such correlation in quantities of lumber between the different sizes, however measured, as warrants the average so ascertained and the computation based on it. The method would, perhaps, produce an equitable result if the sizes selected were uniform in every particular, number included, such a result as a prospective purchaser of a timber tract might accept as a basis for negotiation with the owner, as may sometimes be done. That, however, probably is not often the case. Its uncertainty condemns it because there is a more approved method of estimating the quantity of lumber in timber land.

Moreover, if plaintiff, as he did or attempted to do, could ascertain the log contents of 20 trees, what reason except inconvenience prevented the ascertainment of the gross quantity contained in each of the 1,103 trees, if he severed that many from the boundary? No other reason is perceived, and he assigns none, and he does not cite authority bearing upon or tending even remotely to sustain the procedure adopted and followed in this case, and we find none.

The necessary conclusion therefore is that the defendant is entitled to another trial, and to afford that apportunity our order will reverse the judgment, set aside the verdict, and remand the case.

*Reversed and remanded.*